IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY LAMONT ROGERS,** | : | **CIVIL ACTION** |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 11-4706 |
| | : | |
| **DETECTIVE MILLS, et al.,** | : | |
| Defendants | : | |

# M E M O R A N D U M

**STENGEL, J.**                                             August 28, 2012

Following a federal jury trial in 1996, Troy Lamont Rogers was convicted of distribution of cocaine base and distribution of cocaine base within 1000 feet of a playground.  After the court found him to be a career offender within the meaning of Section 4B1.1 of the United States Sentencing Guidelines, Mr. Rogers was sentenced to 276 months' incarceration.  See N.T. 8/15/96 at 12, 37.  Currently a federal inmate housed at the Bennettsville South Carolina Prison Camp, Mr. Rogers brought this action *pro se* against Detective Mills, the Bristol Township Police Department, and "unknown officers and DEA Agents" pursuant to 42 U.S.C. § 1983.[1]  The defendants have filed two separate motions to dismiss the complaint to which the plaintiff has responded.  For the following reasons, I will grant the motions to dismiss in their entirety.

---

[1]  This action is actually a mix of Bivens claims and 42 U.S.C. § 1983 claims.  See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).  In Bivens, the Supreme Court recognized a private cause of action to recover damages against a federal agent for violations of constitutional rights.  Therefore, although not specified as such in this complaint, I will construe the constitutional claims against the federal officers as properly brought under Bivens.

## I. BACKGROUND

In its decision affirming Mr. Rogers' conviction and sentence, the Court of Appeals for the Third Circuit provided the following procedural and factual background:

> On September 16, 1994, Ed Jones, a paid confidential informant working with the Drug Enforcement Agency ("DEA"), began negotiating with Rogers, a.k.a. "Smoke," for the purchase of crack cocaine. A meeting time and place were set, but Rogers failed to keep the appointment; instead, Jones encountered Carnell McCleve, believed to be an associate of Rogers in the local drug business. When Jones asked, "Where's your boss at?" McCleve replied that Rogers had left, but that he, McCleve, would sell Jones the bargained-for crack cocaine.
>
> Later that day, Jones complained to McCleve that he had been shorted on the purchase and asked if it was the same crack that Rogers had discussed earlier with Jones. McCleve confirmed that it was and agreed to compensate Jones for the shortage. Rogers then appeared and made arrangements to redress the deficiency later that evening. Twice that night, Rogers failed to rendezvous with Jones. Eventually, though, the parties met and decided that Rogers would sell Jones two more ounces of cocaine the next day and also make up for the previous deficit. Again, Jones arrived at the agreed place and time and, again, Rogers did not appear. After two additional chance meetings, Jones and Rogers finally completed the deal for the sale of crack at Roger's house, a location measured to be within 1,000 feet of a playground.
>
> On August 24, 1995, a federal grand jury returned a five count indictment charging Troy Lamont Rogers with offenses arising from distribution of crack cocaine. A jury found Rogers guilty of Count 4, distribution of 17.92 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and Count 5 distributing the same 17.92 grams within 1,000 feet of a playground in violation of 21 U.S.C. § 860. Rogers was sentenced to a term of imprisonment of 276 months. A $1,000 fine, eight years' supervised release and a $100 assessment were also imposed. Rogers filed a

>     timely appeal challenging the admission of evidence of his
>     alleged commission of other drug offenses and the district
>     court's application of the Sentencing Guidelines.

United States v. Rogers, No. 96-1756, slip op. at 1-3 (3d Cir. March 21, 1997).

In his complaint, Mr. Rogers claims that Bristol Township Police Officer Mills acted improperly during the 1994 investigation which led to his conviction and imprisonment. Specifically, he alleges that Detective Mills induced Ed Jones, a confidential informant, to add a half ounce of cocaine base to the "quarter to a half ounce of cocaine base" that the informant bought from Mr. Rogers. As proof, Mr. Rogers attaches to the complaint a notarized affidavit dated June 8, 2010 in which Mr. Jones exposed the alleged plan. See Jones' Affidavit (Document #3 at 8).

## II.  STANDARD OF REVIEW

Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleadings standards in federal civil rights actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss under Fed. R. Civ. P.12(b)(6). Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009); see also Phillips v. County of Allegheny, 515 F. 3d 224, 230 (3d Cir. 2008).

Therefore, following Twombly and Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court must accept all of the complaint's well-pleaded facts as true but may disregard legal

3

conclusions. Iqbal, 556 U.S. at 679. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id. see also Phillips, 515 F.3d at 234-235. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

### III. DISCUSSION

Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under the color of state law who deprives the party of his or her constitutional rights. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Therefore, in order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the Constitution, and (2) that the constitutional deprivation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Section 1983 does not by itself confer

substantive rights, but instead provides a remedy for redress when a constitutionally protected right has been violated.  Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

Likewise, Bivens creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official."  Butz v. Economou, 438 U.S. 478, 504 (1978).  A civil rights claim brought under Bivens is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a Bivens claim.  Brown v. Philip Morris Inc., 250 F.3d 789, 800 (3d Cir.2001).  To state a claim under Bivens, the plaintiff must show that the defendant, acting under color of federal law, deprived him of a right secured by the Constitution or laws of the United States.  Brown, 250 F.3d at 800.

Here, as relief for the alleged violation of his constitutional rights, Mr. Rogers seeks judgment granting him:  (1) a declaration that the acts and omissions alleged in the complaint violated his rights under the Constitution and laws of the United States; (2) an "injunction ordering the defendants to communicate to the District Attorney's office the true facts and correct drug amount that were actually involved;" (3) compensatory damages in the amount of $500,000 against each defendant jointly and severally; (4) punitive damages in the amount of $2 million against each defendant; (5) a jury trial on all issues triable by jury;[2] and (6) costs of the suit.  See Compl. at 3-4.

---

[2] In both of his responses to the motions to dismiss, Mr. Rogers incorrectly indicates that he "is *not* seeking a retrial of his case and did not even state so in his complaint.  He is also not seeking

In Heck v. Humphrey, the Supreme Court held that if the success of a § 1983 damages suit brought by a prisoner "would necessarily imply the invalidity of his conviction or sentence," the prisoner may only bring the claim where the conviction or sentence has been invalidated. 512 U.S. 477, 484 (1994). This holding has been referred to as the "favorable termination rule." See Torres v. Fauver, 292 F.3d 141, 147 (3d Cir. 2002). The favorable termination rule has been applied to bar claims under Bivens as well as § 1983. See Lora-Pena v. FBI, 529 F.3d 503, 506 n.2 (3d Cir. 2008). If the plaintiff's conviction or sentence has not been invalidated, then any claims in the complaint that "necessarily imply the invalidity of his conviction or sentence" must be dismissed. Heck, 512 U.S. at 487. Any action that is tantamount to a collateral attack on a conviction or sentence, in the sense that it would result in a speedier release from custody, is barred by the favorable termination doctrine. Wilkinson v. Dotson, 544 U.S. 74 (2005). As stated by the Supreme Court in Heck:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal

---

to have a re-sentence of the time that was given him by the courts. Plaintiff is asking for injunctive relief of having the true facts recorded as to the amount of drugs that were sold and monetary damages for violation of his rights to a fair and impartial trial." See Documents #8 and 13 (emphasis added). However the prayer for relief is phrased does not matter because any decision in Mr. Rogers' favor would "necessarily imply" that his conviction and sentence were invalid. See Skinner v. Switzer, 131 S.Ct. 1289, 1298 (2011) (citing Heck, 512 U.S. at 487). Whether Mr. Rogers seeks a retrial, a re-sentencing, or just monetary damages makes no difference to the outcome here.

6

> court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck, 512 U.S. at 486-487. Accordingly, civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments. Wallace v. Kato, 549 U.S. 384, 392 (2007). Congress has determined that *habeas corpus* is the appropriate remedy for prisoners attacking the validity of the fact or length of their confinement. Id. Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences. Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002).

Thus, a court faced with a suit for damages under § 1983 must first "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his . . . sentence." Heck, 512 U.S. at 487. If so, the complaint must be dismissed "unless the plaintiff can demonstrate that the . . . sentence has already been invalidated." Id. Here, no matter how Mr. Rogers attempts to characterize his challenge, he cannot escape the fact that he is ultimately calling into question the validity of his conviction and sentence. Mr. Rogers does not allege that his conviction or sentence has been overturned, or that he has successfully challenged either the validity of his confinement or its duration. He has, in fact, unsuccessfully challenged his sentence through several avenues, including a direct appeal, relief under 28 U.S.C. § 2255, a motion for reconsideration, and other related appeals. Accordingly, his constitutional claims are barred by Heck and must be dismissed.

In the alternative, I note that had the favorable termination doctrine not applied here, the claim against the federal defendants would still fail. Civil rights claims may only be brought against "persons." See 42 U.S.C. § 1983. Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 173 (3d Cir. 2005). Further, "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each government official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 556 at 676. Here, neither the complaint nor the attached affidavit alleges any personal or affirmative conduct attributable to the federal defendants. In fact, the complaint and the affidavit allege only acts by a single police officer of Bristol Township, with no allegation that those acts were products of a municipal policy or custom. When Defendant Mills first propositioned Mr. Jones to add the crack cocaine to the amount purchased, Mr. Jones hid the drugs in his boots to avoid detection by the Unknown DEA agents during their expected search of Mr. Jones. See Compl. at 2. Furthermore, in his affidavit, Mr. Jones alleges that Detective Mills called him separately back into the room so that he could talk privately about the alleged illicit scheme with Mr. Jones. See Jones Affidavit at Event Issue #8. Under these circumstances, there is no allegation that the federal defendants participated personally or affirmatively in conduct that could be construed as violating the constitution or the federal laws of the United States. Thus, if the Heck case were inapplicable here, I would still have dismissed the claim against the federal defendants.

I also note in the alternative that the Bristol Township Police Department would also be dismissed from this case because it is not an entity that can be sued in a § 1983 action.  Police departments are merely administrative arms of municipalities.  See Bonenberger v. Plymouth Township, 132 F.3d at 25 n. 4 (3d Cir.1997).  In Board of County Commissioners of Bryan County v. Brown, the Supreme Court declared that § 1983 civil rights liability may not be imposed upon a municipality on the basis of vicarious liability:

> We held in Monell v. New York City Dept. of Social Servs., that municipalities and other local governmental bodies are "persons" within the meaning of § 1983.  We also recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.  Our conclusion rested partly on the language of § 1983 itself.  In light of the statute's imposition of liability on one who "subjects [a person], or causes [that person] to be subjected," to a deprivation of federal rights, we concluded that it "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." . . . . Our conclusion also rested upon the statute's legislative history.  As stated in Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986), "while Congress never questioned its power to impose civil liability on municipalities for their own illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others."  We have consistently refused to hold municipalities liable under a theory of *respondeat superior*. . . . ."

520 U.S. 397, 403 (1997) (internal citations omitted).

In conclusion, because the Supreme Court has emphatically stated that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments, I will grant both motions and dismiss this complaint in its entirety.

An appropriate Order follows.